*EX PARTE* CAROLINA NATIONAL BANK *IN RE* HOMESTEAD BUILDING AND LOAN ASSOCIATION v. PARKER.

1. JUDGMENT—PRACTICE—EXCUSABLE MISTAKE.—The proper practice for relief from a judgment, &c., on account of excusable mistake, &c., is by motion in the case, under Code, 195.

2. IBID.—APPEAL—DISCRETION—BURDEN OF PROOF.—A motion to vacate a judgment and permit a party to change his answer, is addressed to the discretion of the Circuit Judge, and his action thereon is not appealable, unless there is an abuse of such discretion, and the burden of showing this is on appellant. MR. JUSTICE POPE *dissents*.

Before GARY, J., Richland, January, 1899. Affirmed.

Petition by Carolina National Bank, in the case of Homestead Building and Loan Association, against G. W. Parker. The order appealed from is as follows:

On the 28th day of May, 1898, a complaint and summons in favor of the Homestead Building and Loan Association

against George W. Parker, W. G. Childs, as administrator
of the estate of E. R. Arthur, deceased, and the Carolina
National Bank of Columbia, S. C., were lodged in the office
of the clerk of the Court of Common Pleas for Richland
County. This complaint was for the foreclosure of a cer-
tain mortgage of real estate, executed by the defendant,
George W. Parker, to the Homestead Building and Loan
Association of Columbia, S. C. The said mortgage bears
date 9th April, 1896, and to secure the payment of a bond
for the sum of $3,200. The complaint is in the usual form,
with the exception of the eighth paragraph, which is as fol-
lows: "That the defendant, W. G. Childs, as administrator
of the estate of E. R. Arthur, deceased, and the Carolina
National Bank of Columbia, S. C., claim to have a lien upon
the said premises junior to that of the plaintiff's said mort-
gage."

These defendants, through their attorney, Mr. J. S. Mul-
ler, filed an answer to the complaint, the first paragraph of
which is in these words: "1. Admit the allegations con-
tained in paragraph 8 thereof, but say that they have no
knowledge sufficient to form a belief as to the truth of the
other allegations therein contained." The answer has other
paragraphs which set up the mortgage of George W. Parker
to Edward R. Arthur, executed on the 24th day of Novem-
ber, 1893, to secure the payment of his note of even date for
$1,250, payable sixty days after said date, and asks affirma-
tive relief in the premises. It should have been stated that
the answer states in the fourth paragraph: "That on said
November 24th, 1893, the said E. R. Arthur indorsed said
note and assigned said mortgage to the defendant bank for
value." Upon the issues thus made by the pleadings, the
cause was referred to the master for Richland County by
order of Judge Gage, bearing date 12th July, 1898, to com-
pute the amount due upon the mortgage mentioned in the
complaint. The master filed his report on July 14th, 1898,
reporting the aggregate sum due on the said mortgage to be
$1,568.35. And also reporting that the same was a first lien

on the premises described in the complaint.   He further re-
ported that there was due upon the note and mortgage set up
in the answer of the defendants, W. G. Childs, as adminis-
trator, &c., and the Carolina National Bank, the total sum of
$1,331.42.   And also reported that this mortgage was a sec-
ond lien on the premises described in the complaint.   On the
15th day of July, 1898, a decree of foreclosure and sale was
granted by Judge Gage, directing that the premises be sold
on the first Monday in September, or on some subsequent
and convenient salesday thereafter.   In this decree the fact
is recited that the mortgage described in the complaint has a
prior lien upon the premises, and that the lien of the mort-
gage of the bank is second.   On the 2d day of September,
1898, the defendant, the Carolina National Bank of Colum-
bia, S. C., appeared before me by a petition in the cause, re-
citing the fact that the mortgage of the plaintiff upon which
the decree of foreclosure had been had was junior in lien to
the mortgage held by the bank—that the complaint alleged
that said mortgage was junior in lien to that held by the plain-
tiff, and by reason of a statement to the same effect, made by
plaintiff's attorney to the attorney of the petitioner, and to
an excusable misunderstanding and misapprehension by such
last mentioned attorney of information given him by the
cashier of petitioner, an answer was prepared by him and
served by him for petitioner on plaintiff's attorney, admit-
ting such allegations of the complaint; a reference was held,
the master found as charged in the complaint and admitted
by the answer, and decree was signed on July 15th, 1898,
declaring plaintiff's mortgage to be a first lien on the prem-
ises and petitioner's lien junior thereto.   The petition then
recites the fact that the judgment of foreclosure was signed,
enrolled and directed a sale of foreclosure as stated above.
That the mortgaged premises have been advertised for sale.
The petitioner further recites the fact that the petitioner's
mortgage was in fact of older date and of prior lien than plain-
tiff's mortgage, and this fact was known to plaintiff.   That
the only paper which plaintiff relied on as a postponement of

petitioner's lien was indorsed on plaintiff's mortgage and recorded therewith, but never seen by any officer of petitioner's bank, nor by its attorney until within a few days past, and no officer of such bank except its attorney knew of the admission of such answer, nor of the terms of said report or decree until within the same time. In the 6th paragraph the petitioner recites: "And your petitioner reiterates that its erroneous admission in its answer, the erroneous master's report and the erroneous decree, are in no ways attributable to any negligence on the part of your petitioner or its attorneys, but it is the result solely of excusable mistake, caused by the statement of plaintiff's attorney to him, and of the misapprehension of the information received by him from his client, without fault on the part of either attorney or client." The prayer of the petitioner asks for an order requiring plaintiff to show cause at the next term of the Court of Common Pleas for Richland County why the said report and decree should not be vacated, or so amended as to declare the real rights of the parties, and why the petitioner should not be permitted to amend its answer by denying the priority claimed in the complaint for plaintiff's mortgage over that of defendant's mortgage, and until the hearing of the issues a restraining order be granted. This petition was supported by affidavits, all of which appear in the record.

After hearing the attorneys for petitioner, I granted a formal order requiring the plaintiff to show cause as prayed for in the petition, and in the meantime that it be restrained from enforcing the decree, &c.

The plaintiff made formal return to the rule, which was likewise supported by affidavits, and moved to vacate the restraining order as well as to dismiss the rule. At this hearing I declined to vacate the order, for reasons that it is not necessary to state here; and, on the contrary, continued the same to the call of the cause at the regular term of Court; at which time the whole matter was heard fully on the merits. The return is somewhat lengthy and will not be set out in full.

At the hearing it was strenuously contended that the relief sought by the petitioner could not be granted under the form of practice adopted by the petitioner. In other words, it was argued that the relief prayed for should be by some pleading in the nature of a bill of review and not by a petition in the original cause. The case of *Crocker* v. *Allen,* 34 S. C., 460, seems to be conclusive on this point. It is expressly held in that case, that the Court of Common Pleas has always claimed the power to entertain such a motion. The same conclusion has been announced in the later case of *Sullivan* v. *Susong,* 40 S. C., 155. Also in the more recent case of *Ex parte Roundtree,* 51 S. C., 411, in which the Court says : "The fourth ground makes the point that a judgment cannot be vacated for excusable neglect or surprise when the party against whom the judgment was rendered was represented by counsel. We cannot assent to such a proposition, for it is easy to conceive of a case when a judgment may be rendered against a party through some excusable neglect or surprise of his counsel. And we think the terms of section 195 of the Code are broad enough to cover such a case." * * * So my conclusion is, that a motion in the original cause is not only the proper proceeding to open a judgment entered against a defendant, through excusable neglect or surprise, but, on the contrary, is exclusive, and it matters not whether the judgment was entered by default or otherwise.

This brings us to the only remaining issue in the case, viz : Is the excuse offered by the petitioner sufficient? If it is, then it follows as a legal right, he should have the judgment opened. If not, then his motion should be denied. The right invoked is a legal one, and is not to be governed by any favor of the Court. It appears from the affidavit of Mr. Muller, the attorney for the petitioner, that on the 28th day of May, 1898, he accepted service of the summons and complaint in the cause. That on July 13, 1898 (the time of answering having been extended by Mr. Patton), he served the joint answer of the defendants, Childs, administrator, &c.,

and the bank. He had one month and five days after the service of the summons and complaint within which to acquaint himself with his client's defense. He states in his affidavit, that before preparing the answer he "was given to understand by Mr. Patton, who had the case in charge for plaintiff, that the lien of defendant's mortgage had been postponed to that of plaintiff's mortgage, * * * but bearing in mind the rights of the defendant bank, he went over to the bank and asked Col. Jones, the cashier, whether the bank had consented to the postponement of the lien of plaintiff's mortgage. Col. Jones then told me, or at least I understood him to tell me, that the bank had so consented." He then prepared and served the answer. Col. Jones, the cashier of the bank, states in his affidavit that he cannot recall the interview between Mr. Muller and himself. He then gives it as his opinion as to the probabilities of such an interview. On the other hand, Mr. Patton in his affidavit states most positively that he did not tell Mr. Muller that the Carolina Bank had postponed the lien of their mortgage. He further states that at the time he did not know that the bank had any connection with the mortgage. Now, apart from any misunderstanding among these gentlemen (all of whom I am pleased to say are gentlemen of the highest integrity and character), was not the release itself the most natural mode by which the bank's rights were to be determined? It seems that the release about which this difference has arisen was not only in writing, but was of record. Would not due diligence suggest that the petitioner, if it did not know the contents of a record it is charged with having executed, should at least refer to the record for the information? That was the highest and best evidence of its contents. After much deliberation, I am unable to conclude that the petitioner under the circumstances of this case, has shown that degree of diligence that the law requires. The petitioner has had his day in Court, and his failure to present his case in its proper light is due to his own fault, and I am unable to say that the petitioner is excusable; on the other hand, he had

2—56

notice of such facts material to his defense, that if he had only used that care that the law contemplates, he would have been fully in possession of the facts he now undertakes to plead. I do not think the petitioner has fully met the requirements of the law. It is, therefore, ordered, that the motion be refused.

From this order the petitioner appeals, and respondent also seeks to sustain the order because the remedy was not by petition but by bill, and because the relief sought could not be granted under Code, 195.

*Mr. R. W. Shand,* for appellant, cites: *Holder of mortgage is not bound to search record to ascertain whether rights have accrued to other persons:* 20 S. C., 23. *Transfer of note carries transfer of mortgage securing it:* 14 S. C., 143; 10 S. C., 225; 42 S. C., 176; 5 S. C., 342; 125 U. S., 382. *There is no negligence. Mr. Patton honestly made a mistake of law; Mr. Muller a mistake of fact based on that mistake. Therefore, we must apply the law governing mutual mistakes of fact:* 25 Wis., 566; 35 Pac. R., 985; 84 N. C., 620; 7 E. L. & Eq., 16; 47 S. C., 393; 27 N. J. Eq., 102; 22 Gratt., 140; 49 Pac. R., 539; 31 N. J. Eq., 314; 37 Cal., 471; 54 Pac. R., 121; 41 At. R., 408; 1 Wheat., 444; 68 Md., 383; 32 Ark., 717; 65 Ga., 466; 106 Ind., 81; 68 Cal., 275; 34 Cal., 235; 11 S. E. R., 258; 17 How., 443; 22 Wall., 248; Bail. Eq., 506; 51 S. C., 410.

*Mr. H. C. Patton,* contra, cites: *Petitioner being represented at hearing, cannot have relief under Code, 195:* 7 S. C., 71; 8 S. C., 60; 14 S. C., 324; 17 S. C., 219; 24 S. C., 138; 25 S. C., 53; 26 S. C., 581; 27 S. C., 368; 47 S. C., 393. *Action of Circuit Judge is not reviewable here:* 52 S. C., 305. *Application should have been by bill filed and not by petition:* 2 Hill Ch., 548; Bail. Eq., 278; 1 McC. Ch., 30; 30 Md., 280; 84 N. C., 616; 63 N. C., 502. *No ground for equitable interference is either alleged or proved:* 84 N. C., 616; 77 N. C., 72; 36 N. J., 632; 65 N. C., 502; 2 McC. Ch.,

570; 21 S. C., 491; 54 Md., 636; 65 N. W. R., 406; 46 Ia., 186.

July 28, 1899. The opinion of the Court was delivered by

MR. JUSTICE GARY. The facts of this case are set forth in the order of his Honor, the Circuit Judge, dismissing the petition, which will be reported. The questions presented by the exceptions will be hereinafter stated. Section 3, article V., Constitution of 1868, which was not repealed by the Constitution of 1895, is as follows: "\* \* \* That justice may be administered in a uniform mode of pleading, without distinction between law and equity, they (the General Assembly) shall provide for abolishing the distinct forms of action, and for that purpose shall appoint some suitable person or persons whose duty it shall be to revise, simplify and abridge the rules, practice, pleadings and forms of the Courts, now in use in this State." Section 161 of the Code is as follows: "There shall be no other forms of pleading in civil actions in Courts of record in this State, and no other rules by which the sufficiency of the pleadings is to be determined, than those prescribed in this Code of Procedure." Section 195 of the Code provides that "the Court \* \* \* may in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him, through his mistake, inadvertence, surprise or excusable neglect, and may supply an omission in any proceeding \* \* \*." In the case of *Durant* v. *Philpot,* 16 S. C., 125, which was a motion for a new trial on the ground of after-discovered evidence, Mr. Chief Justice McIver used this language: "Under the practice of the former Court of Equity, it might, perhaps, have been difficult to sustain the mode of proceeding adopted in this case. Under that practice, a petition for rehearing and a bill of review were sustainable on similar grounds, one of which was newly-discovered evidence (*Hewit* v. *Smith,* 3 Rich.

Eq., 541); but a petition for rehearing was the proper mode of proceeding, where the decree had not been signed and enrolled or filed; whereas, after the filing of the decree, the proper mode of proceeding would be by application for leave to file a bill of review (*Simpson* v. *Downs,* 5 Rich. Eq., 425; *Hinson* v. *Pickett,* 2 Hill Ch., 353); and such bill could not be filed without leave of the Court. *Simpson* v. *Smith* or *Watts,* 6 Rich. Eq., 364. If, therefore, this should be regarded as a petition for rehearing, it is liable to two objections: First, because the decree has been filed; and second, the petition is not verified by two counsel. *Ex parte Terry,* Rice Ch., 1; 3 Dan. Ch. Pr., 1623. On the other hand, if it be regarded as in the nature of a bill of review, no leave of the Court to file it seems to have been obtained. It seems to us, however, that since the abolition of the Court of Equity, and the requirement of the Constitution in section 3, article V., that justice shall be administered in a uniform mode of pleading, without distinction between law and equity, these modes of proceeding by a petition for rehearing and bill of review have become inapplicable, and that now the same results can be obtained by motion under the provisions of section 2, chap. CV., Gen. Stat., 497; *Hill* v. *Watson,* 10 S. C., 277. See, also, remarks of Simpson, C. J., in *State* v. *David,* 14 S. C., 428." In the case of *Covington* v. *Covington,* 47 S. C., 273, Mr. Justice Pope, in behalf of the Court, says: "It does not affect the soundness of these views so expressed, that the legislature has repealed section 2, chap. CV., Gen. Stat., 497, for it will be observed, that there was no provision in the repealed law relative to the form under which the desired relief was to be obtained, which was made the basis of this utterance of this Court; but, on the contrary, it was bottomed on the change wrought in the mode of pleading in our Courts by section 3, article V., of the Constitution of 1868." From the foregoing it is manifest that it was intended to abolish the proceedings by petition for rehearing and by bill of review, and to substitute therefor the

remedy provided by section 195 of the Code, which was intended to be exclusive.

Waiving, however, this objection to the pleadings, we will consider the question raised by the exceptions as if the petitioner had proceeded by motion, under section 195 of the Code. In the case of *McDaniel* v. *Addison,* 53 S. C., 222, Mr. Chief Justice McIver uses this language, in delivering the opinion of the Court: "The motion is based upon section 195 of the Code of Procedure, which provides, amongst other things, that the Court may 'in its discretion, and upon such terms as may be just, allow an answer or reply to be made, or other act to be done, after the time limited by this Code of Procedure, or, by an order, enlarge such time.' It is manifest, therefore, from the express terms of the statute, that a motion of this character is addressed to the discretion of the Circuit Court, and not, therefore, ordinarily appealable. For, as it was said by the late Chief Justice Simpson, in *Truett* v. *Rains,* 17 S. C., 451, and quoted with approval in the very recent case of *Michalson* v. *Roundtree,* 51 S. C., 405, 'As a general rule, where a Court or Judge is invested with power to be exercised at discretion, such power is absolute, and when exercised it is final. From the very meaning of the term and the nature of the power, discretion is unlimited. It is bounded by no rule except the good sense and integrity of the party empowered to exercise it, and in the absence of an express right to appeal, it necessarily follows that its exercise is unappealable.' While this is undoubtedly the general rule, our cases, some of which have been cited in the argument of counsel, recognize at least one exception, and that is where there has been an abuse of discretion. Of course, this Court would not assume that any Circuit Judge had been guilty of abuse of discretion confided to him by law, and hence, whenever an appeal has been taken upon this ground, the burden rests upon the appellant to show that there has been abuse of discretion." The practical question, therefore, raised by the exceptions in this case is whether the Circuit Judge abused

his discretion in dismissing the petition. Such an order is not, ordinarily, appealable, and although this Court might in the first instance have reached a conclusion different from that stated by the Circuit Judge, his action will be affirmed unless there was an abuse of discretion. The parties between whom the misunderstanding in this case arose, are gentlemen of the highest character, and there is not even an intimation of any unfair dealing on the part of any of them. It would be of no practical use to state at length the reasons for the conclusion at which this Court has arrived. The facts stated by the Circuit Judge in his order dismissing the petition, are sufficient to show that he did not abuse his discretion.

It is the judgment of this Court. that the order of the Circuit Court be affirmed.

MR. JUSTICE POPE *dissenting*. I regret my inability to reach the conclusion of the majority of this Court, and inasmuch as I fear the positions they have taken are unsound in fact and in law, I have deemed it a duty I owe to them as well as to myself to lay bare, briefly, the difficulties in the way of their conclusion, as they appear to my mind. I quite agree with them that the position taken by the respondent, in its·effort to add other reasons than those contained in the order of Judge Ernest Gary to support his views, is not sound. Equity pleadings, as distinguished from common law pleadings, have been wiped out of existence by the Constitution of this State, so that now the pleadings in Courts of justice in this State are set forth in the Code of Procedure; and it is now useless to speak of "bills of review," etc., except as by illustration. I also agree with them that section 195 of the Code of Procedure is that under which the Court must administer relief, if any such can be given, to the petitioner here. Section 195, as far as it is concerned with the case as here made, is as follows: "* * * and may also in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party

from a judgment, order or other proceedings taken against him through his mistake, inadvertence, surprise or excusable neglect, and may supply an omission in any proceedings: * * *" In *Garvin* v. *Garvin*, 13 S. C., 162, Mr. Justice McIver, in discussing the provisions of this section (at that time numbered 197), says: "The provisions of section 197 of the Code are intended to provide relief only in cases where a judgment has been taken against a party through *his own* mistake, inadvertence, surprise or excusable neglect, and must be confined to such cases * * *" Now to the case at bar. The Carolina National Bank wishes to correct its own mistake, and one of seriousness to it. It seems that in the year 1893, one George W. Parker wished to have his note for $1,250 discounted for his own use at and by the Carolina National Bank, with Edward R. Arthur as his indorser. This was done, but at the time, in order to secure the payment of the said note so to be discounted so as to save harmless the said E. R. Arthur and the said bank, he (Parker) executed his mortgage of three or more separate parcels of land, which was promptly recorded. In the year 1896, the said Parker wished to borrow some $1,600 from the Homestead Building and Loan Association of the city of Columbia, S. C. This loan was agreed to, but, as a condition precedent, the association required the said E. R. Arthur to release the lien of the mortgage executed by Parker to him as aforesaid, so far as the tract of land which Parker was to mortgage to the Homestead Building and Loan Association was concerned. The said E. R. Arthur executed such release of said mortgage upon the mortgage executed by Parker to Homestead Building and Loan Association, and this mortgage was also recorded in the year 1896. During the year 1897, the said E. R. Arthur and the Carolina National Bank released the lien of the mortgage of George W. Parker on all the several separate parcels of land included in said mortgage, except that one which the Homestead Building and Loan Association had a mortgage upon. In the year 1898, the said George W. Parker having made

default for some months in the payment to the Homestead Building and Loan Association, its attorney, H. Cowper Patton, Esq., when about to begin proceedings in foreclosure, spoke to W. G. Childs, who was the administrator, &c., of E. R. Arthur, deceased, as to the mortgage executed by Parker to Arthur, and was referred to his attorney, J. S. Muller, Esq. When he consulted Mr. Muller, as such attorney, he was told that such mortgage was unsatisfied, and had been assigned to the Carolina National Bank. Accordingly, when the complaint in foreclosure was prepared, Mr. Patton made the said W. G. Childs, as administrator, &c., of E. R. Arthur, and the Carolina National Bank, along with G. W. Parker, defendants. In the eighth paragraph of the complaint he alleged that the liens held by the defendants, W. G. Childs, as administrator, &c., and the Carolina National Bank, were junior to that of the plaintiff. The defendants in question answered through their attorney, J. S. Muller, Esq., admitting the eighth paragraph of the complaint. The reference to the master was had, testimony taken, report made, judgment had thereon on 15th July, 1898, directing sale of the lot of land on first Monday in September, 1898, and also directing that plaintiff be paid before defendant, the Carolina National Bank. After the lands were advertised, Mr. Muller inquired of W. A. Clark, Esq., as president of the Carolina National Bank, if any attempt should be made by said bank to bid at said sale, it being a junior encumbrancer, when, to his surprise, the president informed him that he was mistaken in supposing the lien of the bank was junior to that of the plaintiff, Homestead Building and Loan Association. At once, therefore, papers were prepared to submit to the Court to correct the mistake of the Carolina National Bank made by its attorney, J. S. Muller, Esq. On 2d day of September, Judge Ernest Gary made an order requiring the plaintiff, the Homestead Building and Loan Association, to show cause before him why the decree in this cause should not be vacated, or so amended as to adjudge a priority of lien to the petitioner's

(the Carolina National Bank) mortgage over the mortgage of plaintiff, and in the proceeds of the mortgaged premises, and why petitioners should not be allowed to amend its answer, so as to assert the right. In the meantime, sales were restrained. The Homestead Building and Loan Association made return, and submitted affidavits. On 17th September, 1898, the hearing was continued. In January, 1899, the hearing was had before Judge Ernest Gary, who filed his order during that month, denying the petitioner any relief whatsoever. From this order the petitioner has appealed. The majority of this Court has reached the conclusion that the Circuit Judge's order should be affirmed; but to this, as before remarked, I am unable to agree. The opinion of the majority is based upon two propositions—first, that when a power is confided to a Circuit Judge *in his discretion*, it is only appealable in case it is shown by the appellant that such discretion of the Circuit Judge has been abused; and, second, that the facts as recited in the order of the Circuit Judge show affirmatively that he has not abused his discretion.

. It seems to me that too much potency is ascribed to the discretion vested in a Circuit Judge. I can and do appreciate the discretion ascribed to such officer in the management of the details of trials of causes pending in such Court; but when solemn rights of property of parties litigant are concerned, which solemn rights are confided to his discretion in the care thereof, I do not believe the Constitution of the State intended that the decision of the Circuit Judge should be final, and that there should be no supervisory control over such Circuit Judge by this Court. When the Constitution of this State prescribes the powers of this Supreme Court, it makes no exception in its jurisdiction. Section 4, article V.: "* * * And said Court (Supreme Court) shall have appellate jurisdiction only in cases of chancery, and in such appeals they shall review the findings of fact as well as the law * * and shall constitute a Court for the correction of errors at law under such regulations as the General Assembly may

by law prescribe." This is a cause in equity, and in such causes the Constitution has laid no restrictions upon the power of this Court to hear appeals both as to the law and the fact. Even if the General Assembly, in section 195 of the Code, should confide the hearing of questions thereunder to the discretion of the Circuit Judge, it could not avail against the right to review on appeal any question of law and fact, because the Constitution has conferred the general jurisdiction, in equity, of all appeals to this Supreme Court. I admit that in law cases, as distinguished from equity cases, this Court would of necessity be confined to questions of errors of law, because the Constitution has so prescribed. It is for these reasons I cannot ascribe to the decision of Circuit Judges in questions on the equity side of the Court, under section 195 of the Code, the right to be free from a supervisory control of such decisions by this Court, except in those instances where an abuse of discretion by the Circuit Judge has been made to appear. Nor do I, in the second place, agree that there has been no abuse of discretion here. Clearly the petitioning bank has a prior lien upon a lot of land which its attorney, under a mistake, has allowed to be called and acted upon as a junior lien to that set up by the plaintiff, the Homestead Building and Loan Association. The Carolina National Bank obtained its lien in the year 1893, at which time the mortgage was placed upon the records. It is true, the mortgage was executed to Edward R. Arthur, but in the mortgage it was stipulated that it, the mortgage, was to protect said Arthur and said bank. It is no new equity that ascribes full protection to the bank under a mortgage executed to protect an indorser, even without the formal assignment to said bank of said mortgage by said indorser of the maker, Parker. But said indorser did formally assign such mortgage to the bank. What power did Edward R. Arthur, by his release, possess, in the year 1896, to destroy the lien of that mortgage, so far as the bank was concerned? Now, the only power to cancel or postpone from the lien of that mortgage resided in the Carolina Na-

tional Bank. The said bank was not required to search the records to see what subsequent releases were made of its mortgage by an unauthorized person. As before remarked, Edward R. Arthur had no power to renounce or waive the lien of this mortgage. Therefore, when the Circuit Judge speaks of the duty of this bank to consult the records to see the release of Arthur, in my opinion, he is in error as to the requirements of the law, in such cases made and provided. In the interview of Mr. Patton and Mr. Muller, there was no reference made to any release of mortgage executed by Edward R. Arthur in favor of the Homestead Building and Loan Association; what passed between them, at such interviews, had reference to an alleged postponement of its lien by the bank. Mr. Muller is positive that from something said by Mr. Patton, he made the mistake in concluding that the bank's lien was postponed to that of the Homestead Building and Loan Association. Mr. Muller does not say how this postponement of lien by the bank occurred, or was alleged to have occurred. He sought out Col. Jones, as cashier of the Carolina National Bank, and understood Col. Jones to say that the lien of the bank, under its mortgage, had been postponed to that of the Building and Loan Association. Mr. Muller honestly acted under this mistake, for he put into his answer an admission that the lien of the bank was junior to that of the Homestead Building and Loan Association. Mr. Patton very frankly states in his affidavit that he knew nothing of the Carolina National Bank having any mortgage on this lot of land when he first spoke to Mr. Muller. But he was then certainly informed that such bank did have a lien on such land. How is it that in his complaint he alleges that the lien of this bank was junior to that of the plaintiff? It certainly was a fact in his mind at the time he wrote the complaint that the bank's lien was *junior*. Then how is it otherwise explained that Mr. Muller concluded that the lien of the bank, dated in 1893, was junior to that of the Homestead Building and Loan Association, dated in 1896, than that he got that impression from something Mr. Patton said about

that matter, while the pleadings show he (Mr. Patton) thought the bank's mortgage was junior to that of his client? Mr. Muller never spoke to Col. Jones, the cashier of the bank, until after he received his impressions from his interview with Mr. Patton. Is it not, then, evident that the bank is about to lose its security from an honest mistake it made through its attorney?

These matters so appearing to my mind, I must dissent.